# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVEN SCHMALZ, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>MBIA, INC., GARY C. DUNTON and C. EDWARD CHAPLIN,<br><br>        Defendants. | Civil Action No. 08-CV-0264 (KMK)<br><br>**ECF CASE** |
| TEAMSTERS LOCAL 807 LABOR MANAGEMENT PENSION FUND, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>MBIA, INC., GARY C. DUNTON, C. EDWARD CHAPLIN and JOSEPH W. BROWN,<br><br>        Defendants. | Civil Action No. 08-CV-1845 |

*Caption continues on the following page.*

| | |
|---|---|
| GARY KOSSEFF, individually and on behalf of all other similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>MBIA, INC., GARY C. DUNTON, AND C. EDWARD CHAPLIN,<br><br>        Defendants. | Civil Action No. 08-CV-2362 |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF LEAD COUNSEL FOR THE CLASS, AND CONSOLIDATION OF ALL RELATED ACTIONS**

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................. 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ................................................................................................ 5

    A.    MPERS SHOULD BE APPOINTED LEAD PLAINTIFF BECAUSE IT IS THE "MOST CAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF CLASS MEMBERS"............................................................. 5

        1.    MPERS Has The Largest Financial Interest In The Relief Sought By The Class............................... 6

        2.    As An Institutional Investor, MPERS Is Preferred As Lead Plaintiff Under the PSLRA .............................. 7

        3.    MPERS Satisfies The Requirements Of Rule 23....... 8

    B.    THE COURT SHOULD APPROVE MPERS' SELECTION OF LEAD COUNSEL ........................................................... 10

    C.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED............................................................... 10

CONCLUSION ............................................................................... 11

## TABLE OF AUTHORITES

### CASES

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................... 8, 9

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ................................................................. 7, 10

*In re Espeed, Inc. Sec. Litig.*,
    232 F.R.D. 95 (S.D.N.Y. 2005) ............................................................. 9

*In re Initial Pub. Offering Sec. Litig.*,
    214 F.R.D. 117 (S.D.N.Y. 2002) ........................................................... 8, 9

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ....................................................... 6

*Weltz v. Lee*,
    199 F.R.D. 129 (S.D.N.Y. 2001) ........................................................... 11

### UNREPORTED DECISIONS

*Fishbury, Ltd. v. Connetics Corp.*,
    No. 06 Civ. 11496, 2006 U.S. Dist. LEXIS 90696
    (S.D.N.Y. Dec. 14, 2006) ........................................................................ 8

*Lax v. First Merchants Acceptance Corp.*,
    1997 WL 461036 (N.D. Ill., Aug. 11, 1997)
    *accord Strougo v. Brantley Capital Corp.*
    243 F.R.D. 100 (S.D.N.Y. 2007) ........................................................... 6

*Montoya v. Mamma.com Inc.*,
    No. 05 Civ. 2313 (HB), 2005 WL 1278097
    (S.D.N.Y. May 31, 2005) ........................................................................ 6

## STATUTES & RULES

15 U.S.C. § 77z-1(a)(3)(B)(i) ................................................................... 5

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I) ............................................................. 5

15 U.S.C. § 78j(b) ..................................................................................... 5

15 U.S.C. § 78t(a) ..................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B) ....................................................................... 1

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................... 2, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................. 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ........................................................ 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). ..................................................... 10

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................... 10

Fed. R. Civ. P. 42(a) .................................................................................. 1

## OTHER

SEC, 17 C.F.R. § 240.10b-5 ...................................................................... 5

H.R. Conf. Rep. No. 104-369, at 11,
    104th Cong. 1st Sess. (1995), *reprinted in*
    1995 U.S.C.C.A.N. 679, 690 ............................................................. 7

## PRELIMINARY STATEMENT

The Louisiana Municipal Police Employees' Retirement System ("MPERS") respectfully submits this memorandum of law in support of its motion pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (a) appointing MPERS as Lead Plaintiff for a class (the "Class") of investors who purchased the publicly traded securities of MBIA, Inc. ("MBIA" or "the Company"); (b) approving its selection of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio" or "the Firm") as Lead Counsel for the Class; and (c) consolidating all related securities class actions pursuant to Fed. R. Civ. P. 42(a).

The underlying litigations are securities class actions brought on behalf of investors who purchased securities of MBIA between October 26, 2006 and January 9, 2008 (the "Class Period"). The complaints on file allege that MBIA and certain of the Company's top officials issued false and misleading statements about the Company's financial results that artificially inflated the price of MBIA's publicly traded securities and, as the true information was revealed, caused substantial harm to investors in the Company. Those misstatements relate to MBIA's concealment that its CDOs-squared contained significant exposure to residential mortgage-backed securities ("RMBS").[1]

---

[1] Collateralized debt obligations or "CDOs" are vehicles which invest in a portfolio of financial assets such as commercial loans, corporate or emerging market bonds, asset-backed securities or trust preferred securities. The CDOs finance these investments by issuing multiple tranches of senior and subordinated notes. "CDOs-squared" are CDOs which invest in other CDOs and are, therefore, further removed from the collateral backing transaction.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). MPERS believes that it is the "most adequate plaintiff" under the PSLRA to serve as the Lead Plaintiff on behalf of investors in MBIA securities who were harmed by Defendants' misconduct. As will be discussed below, MPERS has the largest financial interest of any adequate movant in the relief sought in this action. Specifically, MPERS suffered losses of approximately $1,868,742 based on a first-in, first-out ("FIFO") method and losses of approximately $1,785,538 million based on a last-in, first-out ("LIFO") method from its trading in MBIA shares during the Class Period.[2]

Moreover, MBIA satisfies the requirements of Rule 23(a) of the Federal Rules of Civil Procedure, as its claims are typical of the other members of the proposed Class, and it will fairly and adequately represent the Class. MPERS is also a highly sophisticated institutional investor. Thus, it is exactly the type of institutional investor that Congress envisioned would be the lead plaintiff in securities class actions following the passage of the PSLRA. In addition, MPERS has selected and retained Berman DeValerio, a law firm with substantial experience in prosecuting securities fraud class actions, to serve as Lead Counsel for the Class.

## STATEMENT OF FACTS

MBIA is among the world's largest insurers of municipal and other bonds. The Company's headquarters are located in Armonk, New York and it trades on the New York Stock Exchange under the symbol "MBI." MBIA provides financial guarantee

---

[2] A copy of the PSLRA-required Certification submitted by MPERS is attached as Exhibit B to the Declaration of Leslie R. Stern ("Stern Decl."). This Certification sets forth the transactions of MPERS in MBIA securities during the relevant period. In addition, charts reflecting calculations of MPERS' financial losses on MBIA securities are attached as Exhibit C to the Stern Decl.

insurance and other forms of credit protection as well as investment management services to public finance and structured finance issuers and investors and capital market participants. The Company conducts its financial guarantee business through its wholly owned subsidiary MBIA Insurance Corporation and provides investment management products and financial services through its wholly owned subsidiary MBIA Asset Management, LLC.

MBIA has portrayed itself to investors as a careful and conservative insurer. The Company has strived over the years to maintain its AAA rating from various credit rating agencies. During the Class Period, MBIA repeatedly assured investors that its exposure to the credit crisis affecting residential mortgage markets was minimal as it had prudently managed its exposure through stringent underwriting standards. The credit crisis effecting financial institutions throughout 2007 was well publicized and stock market analysts were continually inquiring of MBIA as to its exposure to this imploding area. MBIA continually assured investors and analysts that its exposure was minimal.

Investors learned the truth about MBIA's situation on December 19, 2007, after the stock market closed, when MBIA stunned investors by revealing that a significant portion of bonds it insures, CDOs-squared, was backed by a much higher percentage of RMBS than the Company had previously disclosed. Specifically, MBIA disclosed that $8.1 billion of its CDOs-squared were exposed to a significant amount of RMBS risk. Analysts likewise were shocked and disappointed by the Company's announcement. In reaction to this news, on December 20, 2007, MBIA's stock price plummeted 26%, from $27.02 per share to close at $19.95 per share, on heavy volume.

Less than a month later, on January 9, 2008, before the market opened, MBIA disclosed that its portfolio had deteriorated by $3.3 billion due to declines in its CDO portfolio and that the Company would need to take a charge of $200 million in the fourth quarter. The Company simultaneously announced that it was cutting its dividend to shore up its capital base. MBIA also disclosed that its CDOs-squared exposure was actually $9 billion, nearly $1 billion more than it had announced on December 19, 2007. The Company further revealed that it was in discussions with the Securities and Exchange Commission ("SEC") and with the New York State Insurance Department regarding the adequacy of its prior disclosures. Moreover, in a filing with the SEC on the same day, MBIA "revised" its disclosures in its 2006 Annual Report to disclose information regarding its exposure to RMBS, or sub-prime mortgages, and the effects on MBIA. In response to this news, MBIA's shares fell $2.60 from their opening price of $15.00 to close at $13.40, or 11%. The stock closed down $0.58, or 4%, from the previous trading day's closing price.

Three securities class action complaints have been filed on behalf of investors who purchased securities of MBIA during the Class Period against MBIA, Chief Executive Officer Gary C. Dunton, Chief Financial Officer C. Edward Chaplin and Executive Chairman Joseph W. Brown (collectively "Defendants"). The complaints allege that throughout the Class Period, Defendants violated federal securities laws by issuing false and misleading press releases, financial statements, filings with the SEC and statements during investor conference calls. Specifically, the complaints allege that, throughout the Class Period, Defendants misrepresented and/or failed to disclose the true extent of MBIA's exposure to losses stemming from MBIA's insurance of RMBS,

including, in particular, its exposure to CDOs-squared that are backed by RMBS, in violation of Section 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5.

The first complaint was filed in the Southern District of New York on January 11, 2008 in an action styled *Schmalz v. MBIA, Inc., et al*., No. 07-CV-0264. The notice of pendency was published on January 11, 2008, as required by the PSLRA, announcing that a securities class action had been filed against the Defendants herein, and advised purchasers of MBIA securities that they had sixty days from January 11, 2008 to seek lead plaintiff status.[3] MPERS has filed this motion before the expiration of the 60-day period from such publication.

## ARGUMENT

A.  **MPERS SHOULD BE APPOINTED LEAD PLAINTIFF BECAUSE IT IS THE "MOST CAPABLE OF ADEQUATELY REPRESENTING THE INTERESTS OF CLASS MEMBERS"**

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(i); 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class and has made a *prima facie* showing that it is an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Although the PSLRA does not define the term "largest financial interest," a broad body of case law establishes four key factors that should guide the Court's analysis. That analysis considers: (1) the number of shares purchased; (2) the net number of securities

---

[3] A copy of the notice of pendency is attached as Exhibit A to the Stern Decl.

5

purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended to acquire those shares; and (4) the approximate losses suffered by the movant. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill., Aug. 11, 1997)); *accord Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104 (S.D.N.Y. 2007); *Montoya v. Mamma.com Inc.,* No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005).[4] In light of each of these factors, MPERS believes that it has the largest financial interest in the outcome of this lawsuit.

### 1. MPERS Has The Largest Financial Interest In The Relief Sought By The Class

MPERS purchased 68,190 shares of MBIA on a gross basis during the Class Period. During the same period, MPERS had net purchases of 63,390 shares. In addition, MPERS had net expenditures on MBIA securities of $2,640,452 during the Class Period. In connection with its transaction in MBIA securities, MPERS suffered approximate losses of $1,868,742 on a FIFO basis and $1,785,538 on a LIFO basis.[5] MPERS believes that it has the largest financial interest in the relief sought by the Class and is, therefore, the presumptive Lead Plaintiff.

---

[4] Courts commonly refer to the above-mentioned factors as the *"Olsten"* and/or *"Lax"* factors. For purposes of this memorandum, we will refer to them as the *Olsten* factors.

[5] FIFO and LIFO are the two principal accepted methods for calculating approximate losses for purposes of appointing a Lead Plaintiff under the PSLRA. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward (hence, "first in, first out"). Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward (hence, "last in, first out").

### 2. As An Institutional Investor, MPERS Is Preferred As Lead Plaintiff Under the PSLRA

As an institutional investor, MPERS is the model lead plaintiff envisioned by Congress in its enactment of the PSLRA – a sophisticated institutional investor with a real financial interest in the litigation. *See* H.R. Conf. Rep. No. 104-369, at 11, 104th Cong. 1st Sess. (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("increasing the role of institutional investors in class actions will ultimately benefit the class and courts by improving the quality of representation in securities class actions"); *see also In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 180 (3d Cir. 2005) (PSLRA establishes "a paradigm in which the plaintiff with the largest stake in the case, usually a large and sophisticated institution, is accorded the status of lead plaintiff and assigned the right to appoint and duty to monitor lead counsel for the class").

It is understandable that institutional investors are preferred as lead plaintiffs in securities class actions since they understand the role of fiduciaries and possess the financial sophistication, expertise, experience and resources to ensure that counsel will prosecute the litigation in the best interests of the class. Furthermore, institutional investors have leverage to stand up for the class in order to ensure that counsel actively and properly represents the class, and they have the strength and position to demand the best recovery from defendants.

Here, MPERS is exactly the type of institutional investor Congress envisioned would lead securities class actions when it passed the PSLRA. It is a sophisticated institutional investor that has significant financial expertise, it possesses substantial resources, it understands the complexities of securities litigation and it has experience with managing class actions. MPERS manages approximately $1.6 billion in net assets.

7

*See* Stern Decl., Exh. B, ¶ 2. Thus, MPERS, as institutional investors, has the qualifications to assume the role of Lead Plaintiff in this securities class action litigation against MBIA. MPERS manages the pension and benefits funds of approximately 10,000 employee members, retirees and beneficiaries. *See* Stern Decl., Exh. B, ¶ 2. MPERS is currently serving as lead plaintiff in several securities class actions. *See* Stern Decl., Exh. B, ¶ 7. Thus, MPERS, as an institutional investor, has the qualifications to assume the role of Lead Plaintiff in this securities class action litigation against MBIA.

### 3. MPERS Satisfies The Requirements Of Rule 23

The PSLRA requires that the lead plaintiff must "otherwise satisfy[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as lead plaintiff, the movant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) (citation omitted); *see also Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496, 2006 U.S. Dist. LEXIS 90696, at **6-7 (S.D.N.Y. Dec. 14, 2006). MPERS unquestionably satisfies both requirements in this case.

MPERS claims are typical of the claims of other Class members. "Typicality is satisfied where the claims arise from the same conduct from which the other class members' claims and injuries arise." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y. 2002) (citation omitted). MPERS claims in this action arise from the very same course of misconduct at MBIA as the claims of the other Class members — *i.e.*, the artificial inflation and consequent market correction of MBIA's securities caused by the Company's fraudulent public disclosures. *See, e.g.*, *Glauser*, 236 F.R.D. at 188-89

(finding a Lead Plaintiff movant's claim to be typical where the movant "like all class members, (1) purchased or acquired EVCI securities during the proposed class period, (2) at prices allegedly artificially inflated by Defendants' false and misleading statements and/or omissions, and (3) suffered damages thereby."); *In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (finding a Lead Plaintiff movant's claim to be typical where "[m]embers of the class claim to have been injured by a fraudulent inflation of eSpeed's stock price" and the movant "makes the same claim.").

MPERS likewise satisfies the adequacy requirement of Rule 23. The adequacy requirement is satisfied where "the class members' interests are not antagonistic to one another;" "the class has a sufficient interest in the outcome of the case to ensure vigorous advocacy," and where "class counsel is qualified, experienced, and generally able to conduct the litigation." *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 121. MPERS satisfies each of these elements of the adequacy requirement.

MPERS is adequate to represent the Class because its interests are perfectly aligned with those of the other Class members and are not antagonistic in any way. Indeed, MPERS seeks identical relief on identical claims based on identical legal theories. There are, furthermore, no facts suggesting that any actual or potential conflict of interest or other antagonism exists between MPERS and other Class members.

In addition, MPERS has submitted a Certification in which it affirms its understanding of the duties it owes to the members of the Class by expressing its commitment to oversee the prosecution of the instant litigation. *See* Stern Decl., Exh. B. Through this Certification, MPERS accepts the fiduciary obligations it will undertake if it is appointed Lead Plaintiff in this action.

**B.    THE COURT SHOULD APPROVE MPERS' SELECTION OF LEAD COUNSEL**

The PSLRA vests authority in the lead plaintiff to select lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d at 276 (stating that "the Reform Act evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel selection and counsel retention"). The Court should only interfere with lead plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, MPERS has selected Berman DeValerio to serve as Lead Counsel. Berman DeValerio is highly-experienced in the areas of securities litigation and class actions, and has successfully prosecuted numerous securities fraud class actions and obtained excellent recoveries on behalf of defrauded investors. Further, counsel has the skill and knowledge that will enable them to prosecute this action effectively and expeditiously. *See* Stern Decl., Exh. D. Most notably, Berman DeValerio has represented MPERS in a number of securities class actions. Thus, MPERS is familiar with the Firm's ability to represent classes in such actions. For these reasons, the Court may be assured that by approving MPERS' choice of Lead Counsel, the Class will receive the highest caliber of legal representation.

**C.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

As stated previously, two securities class action complaints have been filed in the Southern District of New York on behalf of investors in MBIA securities:

| Case Number | Abbreviated Case Name | Date Filed |
|---|---|---|
| 08-CV-0264 | *Schmalz v. MBIA, Inc., et al.* | January 11, 2008 |
| 08-CV-1845 | *Teamsters Local 807 Labor Management Pension Fund v. MBIA, Inc., et al.* | February 25, 2008 |
| 08-CV-2362 | *Kosseff v. MBIA, Inc., et al.* | March 6, 2008 |

All of these actions present virtually identical factual and legal issues, as they all arise out of the same alleged misstatements regarding MBIA's violations of the federal securities laws. Accordingly, consolidation is appropriate here. *See, e.g., Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) ("In securities actions where the complaints are based on the same 'public statements and reports,' consolidation is appropriate if there are common questions of law and fact and the defendants will not be prejudiced.") (citation omitted).

## CONCLUSION

MPERS respectfully requests that the Court: (i) appoint MPERS as Lead Plaintiff pursuant to the PSLRA; (ii) approve its selection of Berman DeValerio Pease Tabacco Burt & Pucillo to serve as Lead Counsel for the Class; (iii) consolidate all related actions; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: March 11, 2008  Respectfully submitted,

By:/**S**/ Todd S. Garber
Richard W. Cohen, Esq.
Todd S. Garber, Esq.
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601
914-997-0500
914-733-7251 - direct line
tgarber@lowey.com

11

      www.lowey.com

*Local Counsel for MPERS and Proposed Lead Counsel for the Class*
          *-and-*

**BERMAN DEVALERIO PEASE TABACCO BURT & PUCILLO**
Leslie R. Stern
Jeffrey C. Block
One Liberty Square
Boston, MA 02109
Telephone: (617) 542-8300
Facsimile: (617) 542-1194
E-Mail: lstern@bermanesq.com

*Counsel for MPERS and Proposed Lead Counsel for the Class*

12