**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x
STEVEN SCHMALZ, Individually, and On :
Behalf of All Others Similarly Situated, :
                                                              : Electronically Filed
                      Plaintiff, :
                                                             : Civil Action No.: 7:08-cv-0264-KMK
          v. : (ECF Case)
                                                              :
MBIA INC., GARY C. DUNTON and C. : Hon. Kenneth M. Karas
EDWARD CHAPLIN, :
                                                               :
                   Defendants. :
------------------------------------------------------------ x

*(Additional Captions on the Following Page)*

**MEMORANDUM OF LAW IN SUPPORT OF THE**
**MOTION OF THE PLYMOUTH COUNTY RETIREMENT SYSTEM**
**FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF**
**<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | |
| TEAMSTERS LOCAL 807 LABOR MANAGEMENT PENSION FUND, Individually, and On Behalf of All Others Similarly Situated, | : : : : | Electronically Filed |
| | : | Civil Action No.: 1:08-cv-01845-UA |
| Plaintiff, | : | (ECF Case) |
| v. | : : : | |
| MBIA INC., GARY C. DUNTON, C. EDWARD CHAPLIN and JOSEPH W. BROWN, | : : : : | |
| Defendants. | : | |
| ------------------------------------------------------------ x | | |
| GARY KOSSEFF, Individually, and On Behalf of All Others Similarly Situated, | : : | |
| | : | Electronically Filed |
| Plaintiff, | : : | Civil Action No.: 7:08-cv-02362-UA |
| v. | : : | (ECF Case) |
| MBIA INC., GARY C. DUNTON and C. EDWARD CHAPLIN, | : : : | |
| Defendants. | : : : : : : : | |
| ------------------------------------------------------------ x | | |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 4

I. THE ABOVE-CAPTIONED ACTIONS SHOULD BE CONSOLIDATED .................... 4

II. PLYMOUTH COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF .................... 5

    A. The Procedural Requirements Pursuant to the PSLRA .......................................... 5

    B. Plymouth County is the "Most Adequate Plaintiff" ............................................... 6

        1. Plymouth County Has Made a Timely Motion for Appointment as Lead Plaintiff ........................................................................................ 6

        2. Plymouth County Has the Largest Financial Interest ................................ 6

        3. Plymouth County Otherwise Satisfies Rule 23 .......................................... 8

        4. Plymouth County is the Prototypical Lead Plaintiff Envisioned by the PSLRA ................................................................................................ 10

III. THE COURT SHOULD APPROVE PLYMOUTH COUNTY'S CHOICE OF COUNSEL ........................................................................................................................ 10

CONCLUSION ....................................................................................................................... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................................5, 8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................................11

*Constance Sczensy Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) ................................................................................3, 9, 10

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    416 F. Supp. 161 (C.D. Cal. 1976) ......................................................................................6

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................................7, 10

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2nd Cir. 1990) .............................................................................................5

*Montoya v. Mamma.com Inc.*,
    No. 05 Civ. 2313(HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005) .................................3,8

*In re Olsten Corp. Sec. Litig.*,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ......................................................................................3

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ............................................................................................9

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999) ................................................................................................2

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. May 27, 2004) ...........................................................................10

*In re Star Gas Sec. Litig.*,
    No. 3:04CV1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) ....................................2

*Strougo v. Brantley Capital Corp.*,
    243 F. Supp. 2d 100 (S.D.N.Y. 2007) ..................................................................................3

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ................................................................................12

*Weiss v. Friedman, Billings, Ramsey Group, Inc.*,
    No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 26, 2005) ............7, 11


*Weltz v. Lee*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ...........................................................................................5

## STATUTES & LEGISLATIVE HISTORY

15 U.S.C. § 78u-4(a)(2)(A)..............................................................................................................3

15 U.S.C. § 78u-4(a)(3) ......................................................................................................6, 7, 9, 11

15 U.S.C. § 78u-4(a)(3)(A)..............................................................................................................6

15 U.S.C. § 78u-4(a)(3)(A)(i)..........................................................................................................6

15 U.S.C. § 78u-4(a)(3)(B).........................................................................................................6, 9

15 U.S.C. § 78u-4(a)(3)(B)(i).........................................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii).......................................................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)................................................................................................2, 7

The Plymouth County Retirement System ("Plymouth County") respectfully submits this memorandum of law in support of its motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an order (i) consolidating the above-captioned cases; (ii) appointing Plymouth County as lead plaintiff of the class of purchasers of the securities of MBIA, Inc. ("MBIA" or the "Company"); and (iii) approving Plymouth County's selection of the law firm Labaton Sucharow LLP ("Labaton Sucharow") as lead counsel for the Class.

## INTRODUCTION

The above-captioned actions (collectively, the "Action") are securities purchaser class action lawsuits that have been brought against MBIA and certain officers and/or directors of the Company (collectively, "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. The Action was commenced in this jurisdiction on January 11, 2008 on behalf of all persons or entities, other than defendants, who purchased or acquired the securities of MBIA between October 26, 2006 and January 9, 2008, inclusive (the "Class Period").[1]

Pursuant to the PSLRA, the court appoints as lead plaintiff the movant who possesses the largest financial interest in the outcome of the Action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Plymouth County, with losses of $789,951 in connection with its purchases of MBIA securities during the

---

[1] In the three complaints filed against MBIA, there are two differing time periods used for the class period. The longest, most broad period is used for the purpose of this lead plaintiff motion. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *see also In re Star Gas Sec. Litig.*, No. 3:04CV1766 (JBA), 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (finding that the longest class period alleged is to be utilized in determining the largest financial interest).

Class Period, is adequate and typical to serve as lead plaintiff.[2]  *See* Declaration of Alan I. Ellman ("Ellman Decl.") at Ex. A.  Plymouth County represents more than 9,700 active and retired public employees of Plymouth County, Massachusetts, and manages approximately $636 million in assets.

Although the PSLRA does not define the term "largest financial interest," a broad body of case law in this District establishes that four key factors should guide the Court's analysis: (1) the total number of shares of the subject securities purchased; (2) the net number of securities purchased (offsetting the total number purchased by the total number sold); (3) the net funds expended by the movant to acquire those securities; and (4) the approximate losses suffered by the movant.  *See*, *e.g.*, *Strougo v. Brantley Capital Corp.,* 243 F. Supp. 2d 100, 104 (S.D.N.Y. 2007) (Robinson, J.); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313(HB), 2005 WL 1278097, at *1 (S.D.N.Y. May 31, 2005) (Baer, J.); *Constance Sczensy Trust v. KPMG LLP*, 223 F.R.D. 319, 323 (S.D.N.Y. 2004) (Stein, J.); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998).[3]  As demonstrated below, Plymouth County is the "most adequate plaintiff" in this case.  Plymouth County purchased 23,300 total shares of MBIA common stock with net purchases of 21,100 shares, making net expenditures of $1,083,838 to acquire those securities, and suffering losses of $789,951 on either a first-in, first-out ("FIFO") analysis or a last-in, first-out ("LIFO") basis, the two methods used to calculate this factor.

To the best of its knowledge, Plymouth County's losses represent the largest known financial interest of any Class member seeking to be appointed as lead plaintiff.  *See* Ellman

---

[2] The losses suffered by Plymouth County are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The losses can, however, be determined from the certification required under Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(2)(A) and based upon reference to information concerning the current market for the Company's securities.

[3] *In re Olsten Corp.* is one of the earliest, and most cited, cases setting forth these four factors, which are commonly referred to as "*Olsten* factors."

Decl. at Ex. B. Plymouth County is not aware of any other Class member that has filed an action or filed an application for appointment as lead plaintiff that has sustained greater financial losses. In addition, Plymouth County satisfies each of the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and, therefore, is qualified for appointment as lead plaintiff in the Action. Thus, as demonstrated herein, Plymouth County is the presumptive most adequate plaintiff and should be appointed lead plaintiff.

## STATEMENT OF FACTS

On December 19, 2007, MBIA, one of the country's largest insurers of credit risk, disclosed that it faced an additional $8.1 billion of exposure from insuring collateralized debt obligations ("CDOs") comprised of other CDOs (so-called "CDO-squared securities"), whose underlying collateral included residential mortgage-backed securities ("RMBS") – some of the riskiest securities in the marketplace. The investing public promptly realized that the true risk of investing in MBIA was far higher than previously realized, and securities analysts expressed "shock" and "dismay" that "management withheld this information for as long as it did." Despite months of specific investor questions to MBIA's senior executives regarding the Company's exposure to assets of this sort, Defendants continually assured the market that the Company's risk exposure was materially lower and safer than it actually was. When the Company finally admitted its true state of affairs because of heightened credit rating scrutiny, the price of MBIA stock immediately declined by 26 percent in one trading day, wiping out hundreds of millions of dollars in investor value. The truth continued to emerge through partial disclosures of MBIA's financial weakness and its prior misleading actions.

The true facts, known by the Defendants but concealed from the investing public during the Class Period, were, *inter alia*: (1) the Company lacked requisite internal controls to ensure

that its underwriting standards and its internal rating system for its CDO contracts were adequate and, as a result, the Company's projections and reported results issued during the Class Period were based upon defective assumptions and/or manipulated facts; (2) the Company concealed its exposure to CDOs containing subprime debt and concealed approximately $30.6 billion in CDO exposure; (3) the Company failed to engage in proper due diligence in writing its financial guarantees for its CDO contracts and as such it failed to detect the improper appraisal practices being engaged in by its originators or issuers; (4) the Company had far greater exposure to anticipated losses and defaults related to its CDO contracts containing subprime loans, including even highly-rated CDOs, than it had previously disclosed; and (5) Defendants' statements about the Company's selective underwriting practices during the 2005-2007 time frame related to its CDOs backed by subprime assets were patently false, as the Company's underwriting standards were aggressive and wholly inadequate.

## ARGUMENT

**I.     THE ABOVE-CAPTIONED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation pursuant to Rule 42(a) is proper when actions involve common questions of law and fact.  *See Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001); *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1150 (N.D. Cal. 1999).  The Court has broad discretion under this Rule to consolidate cases pending within its District.  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2nd Cir. 1990)

Courts recognize that class action shareholder suits are ideally suited to consolidation because their unification expedites proceedings, reduces duplication, and minimizes the expenditure of time and money by all concerned.  *See Johnson*, 899 F.2d at 1285; *Aronson*, 79 F. Supp. 2d at 1150.  Consolidation facilitates discovery, conserves judicial resources, and reduces

the confusion and delay that result from prosecuting related class action cases separately. *See In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F. Supp. 161, 176 (C.D. Cal. 1976).

The actions pending before this Court present similar factual and legal issues, as they all involve the same subject matter, and present the same legal issues. Each alleges the same violations of federal securities laws, and is based on the same wrongful course of conduct. Each names the Company and the same individuals as defendants. Because the actions arise from the same facts and circumstances and involve the same subject matter, the same discovery and similar class certification issues will be relevant to all of the above-captioned actions. Accordingly, consolidation under Rule 42(a) is appropriate.

## II.     PLYMOUTH COUNTY SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a lead plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). The plaintiff which filed the complaint in this Action published a notice on *Market Wire* on January 11, 2008. *See* Ellman Decl. Ex. C. This notice correctly indicated that applications for appointment as lead plaintiff were to be made no later than March 11, 2008. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

Next, according to the PSLRA, the Court shall appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class

members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
>
> > (aa)  has either filed the complaint or made a motion in response to a notice . . .
> >
> > (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
> >
> > (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure [pertaining to class actions].

15 U.S.C. § 78u-4(a)(3)(B)(iii); *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

### B. Plymouth County is the "Most Adequate Plaintiff"

#### 1. Plymouth County Has Made a Timely Motion for Appointment as Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the notice, Plymouth County timely moves this Court to be appointed lead plaintiff on behalf of all plaintiffs and class members covered by the Action and any other actions deemed related by this Court.

#### 2. Plymouth County Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See Glauser,* 236 F.R.D. at 190 (appointing institutional lead plaintiff movant with largest financial interest); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc*., No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *3-4 (S.D.N.Y. Jan. 26, 2005) (Holwell, J.) (same). As noted

above, the analysis central to appointing the lead plaintiff focuses on a four-part test: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *1. "These factors are useful, because they look to relatively objective indicators, such as number of shares purchased or sold, rather than to the ultimate question of damages." *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999).

Based upon these factors, Plymouth County believes it has the largest financial interest in this litigation.

**Net Shares Purchased:** Net shares purchased equals the number of shares purchased less the number of shares sold during the Class Period. Plymouth County is a net purchaser of MBIA shares because it bought a total of 23,300 MBIA shares and sold only 2,200 during the Class Period, equaling net purchases of 21,100 shares. *See* Certifications and Loss Analyses, Ellman Decl., Ex. A and B.

**Net Funds Expended:** The net funds an investor expended on the subject securities during the Class Period equals the difference between the total funds the investor spent to purchase those securities and the funds it received from sales of those securities. Plymouth County expended $1,141,597 for MBIA shares during the Class Period, with net expenditures of $1,083,838. *See* Certifications and Loss Analyses, Ellman Decl., Ex. A and B.

**Approximate Losses:** In determining a movant's approximate losses, courts have employed either the FIFO or LIFO method. Plymouth County suffered total losses of $789,951 when calculated using either the FIFO or LIFO loss methods. *See* Ellman Decl., Ex. A and B.

In sum, pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Plymouth County is believed to have the largest financial interest and should be appointed as lead plaintiff in this action.

### 3. **Plymouth County Otherwise Satisfies Rule 23**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *see also Sczensy Trust v. DiCamillo*, 223 F.R.D. 319, 323-24 (S.D.N.Y. 2004) (same). As detailed below, Plymouth County satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff.

### (a) Plymouth County Fulfills the Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists "where the claims of the Lead Plaintiff arise from the same course of conduct that gives rise to the claims of the other class members, where these claims are based on the same legal theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Glauser*, 236 F.R.D at 188-89. However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *See Sczensy Trust*, 223 F.R.D. at 325.

Plymouth County seeks to represent a class of purchasers of MBIA securities which have identical, non-competing and non-conflicting interests. Plymouth County satisfies the typicality requirement because it: (1) purchased or acquired MBIA securities during the Class Period; (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market. *See Glauser*, 236 F.R.D. at 189 (discussing typicality requirement). Thus, Plymouth County's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

### (b) Plymouth County Fulfills the Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." In order to meet the adequacy requirement, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation." *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 413 (S.D.N.Y. May 27, 2004). Plymouth County's interests in this action are perfectly aligned with the interests of absent class members,

- 9 -

and Labaton Sucharow, the group's selected lead counsel, has decades of experience in effectively prosecuting securities class actions. Accordingly, the Court can be assured that Plymouth County and its selected counsel will more than adequately protect the interests of absent class members.

        **4.    Plymouth County is the Prototypical Lead Plaintiff Envisioned by the PSLRA**

In addition to satisfying the preliminary requirements of Rule 23, Plymouth County is precisely the type of large, sophisticated institutional investor – the prototypical Lead Plaintiff – envisioned by the framers of the PSLRA. As noted by Congress in the Statement of Managers, the PSLRA was enacted "to increase the likelihood that institutional investors will serve as lead plaintiff," in part, because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. REP. NO. 104-369, at 34 (1995) (Conf. Rep.). Indeed, Plymouth County is a sophisticated institutional investor with vast resources to adequately litigate this action and supervise class counsel. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 264 (3d Cir. 2001) (noting that the legislative intent behind enacting the PSLRA was to encourage large institutional investors to serve as lead plaintiff); *see also Weiss v. Friedman, Billings, Ramsey Group, Inc.,* No. 05-cv-04617 (RJH) 2006 U.S. Dist. LEXIS 3028, at *3-4 (S.D.N.Y Jan. 26, 2005) (same).

### III.    THE COURT SHOULD APPROVE PLYMOUTH COUNTY'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C § 78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the Class. *See Weiss*, 2006 U.S. Dist. LEXIS 3028, at *20. Labaton Sucharow LLP has had a leading role in numerous important actions on behalf of defrauded investors. Labaton Sucharow served as lead counsel in the Waste

Management securities litigation, which resulted in a settlement of $457 million, one of the largest common-fund securities class action settlements ever achieved at that time. See Labaton Sucharow Firm Resume, Ellman Decl. Ex. D;[4] *see also In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to be knowledgeable about and experienced in federal securities fraud class actions"). Also, Labaton Sucharow is currently serving as lead or co-lead counsel in the securities fraud cases against American International Group, HealthSouth, Countrywide, Amgen, and others. In *Middlesex County Retirement System v. Monster Worldwide, Inc.*, No. 07-cv-2237 (S.D.N.Y. June 14, 2007), Judge Rakoff appointed Labaton Sucharow as lead counsel, stating that "the Labaton firm is very well known to [] courts for the excellence of its representation." Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

Because there is nothing to suggest that Plymouth County or its counsel will not fairly and adequately represent the Class, or that Plymouth County is subject to unique defenses – which is the only evidence that can rebut the presumption of adequacy under the Exchange Act – the Court should appoint Plymouth County as lead plaintiff and approve its selection of Labaton Sucharow LLP to serve as lead counsel for the Class.

## CONCLUSION

For the foregoing reasons, Plymouth County respectfully requests that the Court: (1) consolidate the related actions; (2) appoint Plymouth County as lead plaintiff; and (3) approve Labaton Sucharow LLP as Lead Counsel for the Class.

---

[4] Pursuant to the Court's requirement, attached as Ex. E is the complaint from the first-filed action.

Dated: March 11, 2008

                                        Respectfully submitted,

                                        **LABATON SUCHAROW LLP**

                                        By:  */s/ Alan I. Ellman*
                                        Christopher J. Keller (CK-2347)
                                        Andrei V. Rado (AR-3724)
                                        Alan I. Ellman (AE-7347)
                                        140 Broadway
                                        New York, New York 10005
                                        Telephone:  (212) 907-0700
                                        Facsimile:   (212) 818-0477

                                        *Attorneys for Plymouth County and*
                                        *Proposed Lead Counsel for the Class*