UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————— x

STEVEN SCHMALZ, On Behalf of Himself
and All Others Similarly Situated,

                 Plaintiff,

      vs.

MBIA, INC., et al.,

                Defendants.

Civil Action No. 7:08-cv-00264-KMK

CLASS ACTION

—————————————————————

TEAMSTERS LOCAL 807 LABOR
MANAGEMENT PENSION FUND,
Individually and on Behalf of All Others
Similarly Situated,

                 Plaintiff,

      vs.

MBIA INC., et al.,

                Defendants.

Civil Action No. 7:08-cv-01845-UA

CLASS ACTION

—————————————————————

GARY KOSSEFF, Individually and On Behalf
of All Others Similarly Situated,

                 Plaintiff,

      vs.

MBIA, INC., et al.,

                Defendants.

Civil Action No. 7:08-cv-02362-UA

CLASS ACTION

————————————————————— x

MEMORANDUM OF LAW IN SUPPORT OF MASSACHUSETTS LABORERS' ANNUITY
FUND'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF LEAD COUNSEL

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND ..............................................................................2

III.   ARGUMENT ......................................................................................................7

     A.    The Actions Should Be Consolidated for All Purposes............................7

     B.    The Massachusetts Laborers Should Be Appointed Lead Plaintiff ........8

           1.    The Massachusetts Laborers' Motion Is Timely ........................8

           2.    The Massachusetts Laborers Has the Largest Financial Interest in the Relief Sought by the Class ....................................9

           3.    The Massachusetts Laborers Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure .................................9

     C.    The Court Should Approve the Massachusetts Laborers' Selection of Coughlin Stoia as Lead Counsel .........................................10

IV.   CONCLUSION.................................................................................................11

Proposed lead plaintiff Massachusetts Laborers' Annuity Fund (the "Massachusetts Laborers") respectfully submits this memorandum of law in support of its motion for: (1) consolidation of the related actions pursuant to Fed. R. Civ. P. 42(a); (2) appointment as lead plaintiff in the above-referenced actions pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (3) approval of its selection of Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel for the class.

## I.    INTRODUCTION

Presently pending in this district are three related securities class action lawsuits (the "Actions") on behalf of persons who purchased or otherwise acquired the securities of MBIA Inc. ("MBIA" or the "Company") between October 26, 2006 and January 9, 2008, inclusive (the "Class Period"):

| CASE NAME | CASE NO. | CLASS PERIOD | DATE FILED |
|---|---|---|---|
| *Schmalz v. MBIA, Inc.* | 08-cv-00264 | 01/30/07-01/09/08 | 01/11/08 |
| *Teamsters Local 807 Labor Mgmt. Pension Fund v. MBIA Inc.* | 08-cv-01845 | 10/26/06-01/09/08 | 02/25/08 |
| *Kosseff v. MBIA, Inc.* | 08-cv-02362 | 01/30/07-01/09/08 | 03/06/08 |

These Actions are brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5.

The PSLRA requires courts to resolve consolidation prior to appointing a lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii). As soon as practicable after its decision on consolidation, the court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." *Id.* Here, the Actions should be consolidated because they each involve substantially similar issues of law and fact and defendants. *See* Fed. R. Civ. P. 42(a). In addition, the Massachusetts Laborers should be

- 1 -

appointed as lead plaintiff because it: (1) timely filed its motion; (2) to its counsel's knowledge, has the largest financial interest in the relief sought by the class[1]; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii). Finally, the Massachusetts Laborers' selection of Coughlin Stoia as lead counsel should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND

MBIA, headquartered in Armonk, New York, through its subsidiaries, is a leading financial guarantor and provider of specialized financial services. Specifically, MBIA is a monoline insurer ("monoline"). Monolines such as MBIA insure bonds that have been issued by other entities. MBIA purports to leverage its AAA financial strength rating to guarantee the timely repayment of bond principal and interest of an issuer in the event the issuer defaults, thus allowing the debt issued to get the highest possible rating. MBIA's financial guarantee is designed to protect investors in the event of securities default.

Traditionally MBIA focused mainly on conservative municipal bonds. In recent years, lured by larger profits and higher growth rates, MBIA began writing insurance on collateralized debt obligations ("CDOs"), including CDOs backed by subprime mortgages to higher risk borrowers. CDOs are a type of asset-backed security and structured credit product. CDOs repackage bonds, mortgages and other assets into new securities and then use the income from the underlying debt to pay investors. CDOs are secured or backed by a pool of bonds, loans or other assets, where investors buy slices classified by varying levels of debt or credit risk.

---

[1]      *See* Affidavit of David A. Rosenfeld in Support of Massachusetts Laborers' Annuity Fund's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel ("Rosenfeld Aff."), Exs. A and B.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's business and financial results related to its insurance coverage on CDO contracts.  As a result of defendants' false statements, MBIA stock traded at artificially inflated prices during the Class Period, reaching its all-time high of $73.31 per share in December 2006.

On October 25, 2007, the Company issued a press release entitled "MBIA Inc. Reports 39 Percent Decrease in Nine Months Net Income Per Share; Operating Income Per Share Down 2 Percent for the Quarter."  Gary Dunton, MBIA Chairman and Chief Executive Officer, said:

> "Spreads widened significantly across the market in the third quarter and caused our insured credit derivatives portfolio to generate a large 'mark-to-market' loss, which we do not believe accurately reflects the economics of our business. The 'mark-to-market' loss is not an actual loss, nor is it indicative of future claims. We remain comfortable that our insured credit derivatives portfolio will not result in material credit losses. More important, wider spreads contributed to a substantially better pricing environment for our insurance and asset/liability management products. From an Adjusted Direct Premium production standpoint, the third quarter was outstanding - the Company's second best quarter ever and the best quarter for our structured finance business. Pricing was strong across many sectors, and the credit quality of our new business was very high."

On this October 25, 2007, disclosure, MBIA's stock dropped $8.20 per share to close at $46.99 per share, a one-day decline of 15% on volume of 17.3 million shares, several times the average three-month volume.  However, notwithstanding this decline, MBIA's stock price continued to be artificially inflated due to defendants' failure to reveal the extent of its exposure to CDOs.

Then, on December 5, 2007, Moody's Investors Service made the following statement: "With regard to MBIA, additional analysis of its direct RMBS portfolio leads Moody's to believe the guarantor is at greater risk of exhibiting a capital shortfall than previously communicated; we now consider this somewhat likely . . . ."  On this news, MBIA shares fell 15%.

The following day, on December 6, 2007, the Company responded to Moody's announcement in a press release which stated in part:

- 3 -

"We note Moody's announcement concerning financial guarantors. Contrary to some press reports, Moody's has not taken any rating actions with respect to MBIA. Moody's indicated that, similar to several other monoline insurers, MBIA is somewhat likely to require additional capital. The Company believes that maintaining a strong balance sheet and an adequate capital cushion is prudent. Therefore, the Company has been pursuing capital contingency plans, even in the absence of any immediate rating agency requirements."

On December 13, 2007, the Company announced a delay in its investor conference call in a release entitled "MBIA Investor Conference Call Will Not Be Held on Friday, December 14, Due to Pending Rating Agency Reviews." The next day, December 14, 2007, the Company issued a press release entitled "Moody's Affirms Triple-A Rating for MBIA Insurance Corporation and Changes Outlook to Negative Pending Capital Plan Implementation." Gary Dunton, MBIA Chairman and Chief Executive Officer said: "We are pleased with Moody's affirmation of our Triple-A ratings, and we are confident that we will promptly implement the remaining components of the capital plan presented to Moody's and return to Stable Outlook."

On December 19, 2007, the Company issued a press release entitled "Standard & Poor's Affirms Triple-A Ratings for MBIA Insurance Corporation and Changes Outlook to Negative." Gary Dunton, MBIA Chairman and Chief Executive Officer said: "We are pleased with Standard & Poor's affirmation of our Triple-A ratings as we continue to make progress towards the implementation of a capital management plan during the first quarter of 2008 . . . . While we recognize there is uncertainty in the mortgage and housing markets, we are confident that we will successfully manage through this challenging period, while growing the business profitably, and return to Stable Outlook." The press release further explained that "[t]he Company has supplemented the listing of its exposure to CDOs that include RMBS as of September 30, 2007 to make it consistent with the CDOs that were included in Standard & Poor's analysis and the listing has been posted on its Web site." The referenced information on the Company's web site showed CDO-squared exposure of *$30.6 billion*.

- 4 -

*Forbes* described "MBIA's Startling Exposure Disclosure" as:

> Just when it seemed as if the news couldn't get any worse for bond insurers, it did.
>
> MBIA lost a quarter of its already-diminished value on Thursday after the firm disclosed it had insured $8.1 billion in collateralized debt obligations backed by a combination of other CDOs and mortgages, commonly referred to as "CDO-squared" and seen as among the riskiest part of an investment portfolio.
>
> Making matters worse, $5.1 billion of that insurance was written in 2006 and 2007, a time when the problems with the subprime borrowers went into high gear. The disclosure came as part of an updated list of the Armonk, N.Y.-based company's CDO exposure, which totaled $30.6 billion.
>
>               *       *       *
>
> The timing of the MBIA announcement, a day after a smaller insurer was downgraded to junk-bond status and essentially removed from the market, could hardly have been worse.  "It's surprising," said Piper Jaffray analyst Michael Grasher, "considering others have disclosed their CDO-squared for a couple of months now."

This shocking information caused MBIA's stock price to decline to as low as $18.84 per share before closing at $19.95 per share on December 20, 2007, a one-day decline of 26%, on volume of 52.3 million shares.

Then, on January 9, 2008, the Company issued a press release entitled "MBIA Announces Comprehensive Plan to Strengthen Capital; Updates Estimates of Fourth Quarter Loss Reserves, Changes to Mark-to-Market Valuations and Provides Information on Related CDO Impairments; Announces Dividend Reduction."  MBIA Chairman and CEO Gary C. Dunton said:

> "We are committed to the successful implementation of this comprehensive plan to significantly strengthen our capital position and secure our Triple-A ratings without qualification. We are confident that the additional capital, together with the steady cash flows generated by our large embedded book of business and the opportunity to grow our business profitably in the current market environment, will enable us to continue to serve the needs of our marketplace, and build long-term value for our shareholders."

MBIA's Chief Financial Officer, C. Edward (Chuck) Chaplin commented, "We believe that the outlined capital plan allows MBIA to meet its obligations,

- 5 -

support our customers and continue profitable growth going forward. While the volatility in the mortgage market and non-cash GAAP accounting standards will negatively impact our financial results this quarter, we are quite enthusiastic about future prospects." Speaking to the announced dividend reduction, Mr. Chaplin added, "The announced change in our dividend rate significantly enhances our financial flexibility."

Commenting on the announced initiatives, David Coulter, Managing Director at Warburg Pincus, stated, "Warburg Pincus is pleased by the announced capital strengthening plan and believes that the plan will further affirm MBIA's position as the leader in the financial guarantee insurance industry. Our investment in MBIA is proceeding according to plan with our equity investment expected to close later this month."

On this news, MBIA's stock price declined to as low as $11.11 per share before closing at $13.40

per share on January 9, 2008, on volume of 32 million shares, a two-day decline of 24%.

The true facts, which were known by the defendants but concealed from the investing public

during the Class Period, were as follows:

- The Company lacked requisite internal controls to ensure that the Company's underwriting standards and its internal rating system for its CDO contracts were adequate, and, as a result, the Company's projections and reported results issued during the Class Period were based upon defective assumptions and/or manipulated facts.

- The Company concealed its exposure to CDOs containing subprime debt and concealed some $30.6 billion in CDO exposure.

- The Company failed to engage in proper due diligence in writing its financial guarantees for its CDO contracts and as such it failed to detect the improper appraisal practices being engaged in by its originators or issuers.

- The Company's financial statements were materially misstated due to its failure to properly account for its mark-to-market losses.

- Given the deterioration and the increased volatility in the mortgage market, the Company would be forced to tighten its underwriting standards related to its asset-backed securities ("ABS"), which would have a direct material negative impact on its premium production going forward.

- The Company had far greater exposure to anticipated losses and defaults related to its CDO contracts containing subprime loans, including even highly rated CDOs, than it had previously disclosed.

- 6 -

- The Company had far greater exposure to a potential ratings downgrade from one of the credit ratings agencies than it had previously disclosed.

- Defendants' statements about the Company's selective underwriting practices during the 2005-2007 time frame related to its CDOs backed by subprime assets were patently false – the Company's underwriting standards were aggressive and completely inadequate.

As a result of defendants' false statements, MBIA's stock price traded at inflated levels during the Class Period, allowing defendants to reap some $27 million in compensation for 2006. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down more than 70% from their Class Period and all time high of $73.31 per share in December 2006.

## III.    ARGUMENT

### A.    The Actions Should Be Consolidated for All Purposes

"When actions involving a common question of law or fact are pending before the court, . . . it may order all the actions consolidated . . . ." Fed. R. Civ. P. 42(a).  Here, all of the Actions assert claims on behalf of purchasers of MBIA securities for alleged violations of the Exchange Act during substantially similar Class Periods.[2]  Each of the Actions name the Company and certain of its officers and/or directors as defendants and involve the same factual and legal issues, namely, whether plaintiffs purchased MBIA securities at artificially inflated prices as a result of defendants' allegedly false and misleading statements, and whether defendants' conduct violates §§10(b) and

---

[2]      As long as the factual allegations are virtually identical, minor differences among the class periods and named defendants are not sufficient to preclude consolidation.  *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 92 (S.D.N.Y. 2007) (finding securities class actions with varying class periods appropriate for consolidation pursuant to Rule 42(a)); *Dolan v. Axis Capital Holdings Ltd.*, 2005 U.S. Dist. LEXIS 6538, at *3-*4 (S.D.N.Y. 2005) (finding consolidation of cases with "similar or overlapping claims" and one with an additional defendant, brought pursuant to §§10(b) and 20(a) of the Exchange Act appropriate because the "complaints are almost identical, and the class periods are coextensive").

20(a) of the Exchange Act and SEC Rule 10b-5.  Thus, the Actions should be consolidated.  *See*

*Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

### B.    The Massachusetts Laborers Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private

action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the

Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).

First, the pendency of the action must be publicized in a widely circulated national business-

oriented publication or wire service not later than 20 days after filing of the first complaint.  15

U.S.C. §78u-4(a)(3)(A)(i).  This notice shall advise members of the class of: (1) the pendency of the

action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the

court to be appointed as lead plaintiff within 60 days of publication of the notice.  Here, notice was

published on January 11, 2008, on *Market Wire* in connection with the filing of the first-filed action.

*See* Rosenfeld Aff., Ex. C.

Next, the PSLRA provides that the court shall adopt a presumption that the most adequate

plaintiff is the person or group of persons that –

(aa) has either filed the complaint or made a motion in response to a notice . . .;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).  The Massachusetts Laborers meets each of these requirements and

should therefore be appointed as lead plaintiff.

### 1.    The Massachusetts Laborers' Motion Is Timely

The notice published on January 11, 2008 informed class members that the 60-day deadline

to move for appointment as lead plaintiff was March 11, 2008.  *See* Rosenfeld Aff., Ex. C; 15 U.S.C.

- 8 -

§78u-4(a)(3)(A). In addition, the Massachusetts Laborers has submitted a sworn certification setting forth its transactions in MBIA securities during the Class Period and confirming its willingness and ability to serve as a lead plaintiff. *See* Rosenfeld Aff., Ex. A. Thus, the Massachusetts Laborers has complied with the PSLRA's first requirement and is entitled to be considered for appointment as lead plaintiff.

### 2. The Massachusetts Laborers Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Massachusetts Laborers lost more than $1.2 million due to defendants' fraud. To the best of its knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest. Therefore, the Massachusetts Laborers satisfies the PSLRA's prerequisite of having the largest financial interest.

### 3. The Massachusetts Laborers Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Of Rule 23(a)'s four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding motions for appointment of lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Adequacy is met where: "(1) class counsel is 'qualified, experienced, and generally able to conduct the litigation;' and (2) class members do not

have interests that are antagonistic to one another." *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (citation omitted).

The Massachusetts Laborers satisfies these requirements because, just like all other class members, it purchased MBIA securities during the Class Period in reliance upon the alleged materially false and misleading statements issued by defendants and suffered damages thereby. Thus, the Massachusetts Laborers' claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events.

In addition, the Massachusetts Laborers is adequate to represent the class because its interests are aligned with the interests of the class because both suffered from artificial inflation of the price of MBIA securities and would benefit from the same relief. Furthermore, there is no evidence of antagonism between the Massachusetts Laborers and the class. As explained below, the Massachusetts Laborers' proposed lead counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.

Thus, the Massachusetts Laborers satisfies the requirements of Fed. R. Civ. P. 23 for the purposes of this Motion.

C.    **The Court Should Approve the Massachusetts Laborers' Selection of Coughlin Stoia as Lead Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

The Massachusetts Laborers has selected Coughlin Stoia to serve as lead counsel. *See* Rosenfeld Aff., Ex. D. Coughlin Stoia is one of the nation's leading securities law firms and is regularly appointed as lead counsel by courts around the country and in this district. *See, e.g.,*

- 10 -

*Borochoff v. Glaxosmithkline plc*, 246 F.R.D. 201, 205 (S.D.N.Y. 2007) (approving institutional

investor's selection of Coughlin Stoia as lead counsel). Accordingly, the Massachusetts Laborers'

selection of counsel should be approved.

## IV.    CONCLUSION

For all the foregoing reasons, the Massachusetts Laborers respectfully requests that the

Court: (1) consolidate the Actions; (2) appoint it as Lead Plaintiff; and (3) approve its selection of

Coughlin Stoia to serve as Lead Counsel.

DATED:  March 11, 2008                        Respectfully submitted,

                                             COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
                                             SAMUEL H. RUDMAN
                                             DAVID A. ROSENFELD
                                             MARIO ALBA, JR.


                                                    s/ David A. Rosenfeld
                                             _____
                                                 DAVID A. ROSENFELD

                                             58 S Service Road, Suite 200
                                             Melville, NY 11747
                                             Telephone:  631/367-7100
                                             631/367-1173 (fax)

                                             [Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\MBIA Secs\BRF00049854.doc

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on March 11, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

      I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 11, 2008.

                s/ David A. Rosenfeld
                DAVID A. ROSENFELD

                COUGHLIN STOIA GELLER
                    RUDMAN & ROBBINS LLP
                58 South Service Road, Suite 200
                Melville, NY  11747
                Telephone:  631/367-7100
                631/367-1173 (fax)

                E-mail:drosenfeld@csgrr.com

- 12 -

# Mailing Information for a Case 7:08-cv-00264-KMK

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Todd Seth Garber**
  tgarber@lowey.com

- **Salvatore Jo Graziano**
  SGraziano@blbglaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)