UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE MBIA, INC., SECURITIES LITIGATION | Civil Action No. 08-CV-264-KMK<br>**ECF Case** |

**DEFENDANTS GARY C. DUNTON'S AND
C. EDWARD CHAPLIN'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS**

DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000

*Attorneys for Defendants*

Dated: New York, New York
          October 29, 2010

23301223v1

Table of Contents

Page

Argument ..................................................................................................................................1

    I.       Mr. Dunton's Facsimile Signature Does Not Support Scienter ....................1

    II.      Plaintiffs' Allegations Regarding Other Documents Are Also Inadequate ...........................................................................................................3

          A.      The Mere Availability Of Documents Does Not Establish Scienter ........................................................................................3

          B.      Plaintiffs' Inadequate Confidential Witness Allegations Cannot Rescue Their Arguments Based On Due Diligence Materials ........................................................................................6

Conclusion ..............................................................................................................................10

i

Table of Authorities

Page

**CASES**

*Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391 (S.D.N.Y. 2009) ..........................1

*Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010) ...............................4, 9

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348 (S.D.N.Y. 2006) ..........................8

*Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629 (S.D.N.Y. 2010) ..............................8

*Freudenberg v. E*TRADE Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................8

*Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 527 (7th Cir. 2007) ......................................9

*Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.)*, 252 F.3d 63 (2d Cir. 2001) .....................................................8, 9

*In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241 (S.D.N.Y. 2010) .................5, 6, 10

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474 (S.D.N.Y. 2004) .............................................................4, 8, 9

*In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461 (S.D.N.Y. 2008) ..........................2

*In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2009 WL 3380621 (S.D.N.Y. Oct. 19, 2009) ..........................8

*In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272 (S.D.N.Y. 2009) ......................8

*In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611 (S.D.N.Y. 2007) ...............................4, 5

*In re Société Générale Sec. Litig.*, No. 08 Civ. 2495(RMB), 2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) ..........................4

*In re Van Der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388 (S.D.N.Y. 2005) .....................................................4

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527 (5th Cir. 2008) ..........................9

*Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, No. 09 Civ. 3016(WHP), 2010 WL 2834226 (S.D.N.Y. July 19, 2010) ..............................7

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ......................................................5, 10

Table of Authorities

Page

*S. Cherry St. LLC v. Hennessee Grp. LLC (In re Bayou Hedge Fund Litig.)*, 534
    F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd*, 573 F.3d 98 (2d Cir. 2009)............................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)............................1, 9, 10

23301223v1

Gary C. Dunton and C. Edward Chaplin respectfully submit this reply in further support of their renewed motion to dismiss the Second Amended Complaint. Plaintiffs have not pled specific information reviewed by Mr. Dunton or Mr. Chaplin that could demonstrate either's personal knowledge of any alleged falsity in MBIA's public disclosures. Nor can Plaintiffs point to any specific basis for connecting either Mr. Dunton or Mr. Chaplin to the preparation or issuance of the charts that contain MBIA's alleged misstatements or reflect its alleged omissions. Plaintiffs cannot overcome these deficiencies by blurring the distinction between the Company and these two individuals. Scienter is personal. Accordingly, Plaintiffs' new Complaint should, like its predecessor, be dismissed.

## Argument

### I.   Mr. Dunton's Facsimile Signature Does Not Support Scienter

Plaintiffs' Complaint sets forth explicit language from the Logan III policy that Mr. Dunton's signature was "executed in facsimile." Second Amended Complaint ¶ 129. Plaintiffs' oft-repeated argument that Mr. Dunton "personally signed" insurance policies for two of the six CDOs-squared at issue (Opp. Br. 1-4, 6, 8-11, 13-14, 17) is defeated by the very documents upon which the Complaint relies. *See*, *e.g.*, *Bancroft v. City of Mount Vernon*, 672 F. Supp. 2d 391, 396 n.3 (S.D.N.Y. 2009) (courts are "not required to accept plaintiffs' characterization of the text of [a] document" relied on in a complaint).

The argument that a mechanical signature can establish the *Tellabs*-required compelling inference of scienter against the "signatory" makes no sense. Plaintiffs'

theory requires accepting this chain of inferences: (1) because a subordinate stamped Mr. Dunton's signature on an insurance policy, (2) Mr. Dunton should be deemed to have personal knowledge of the collateral details mentioned in an exhibit to that policy *and* (3) a fraudulent intent should be inferred against him for the issuance months later of an allegedly false summary chart which omitted that policy. Plaintiffs do not allege with particularity that Mr. Dunton had any motive to commit fraud or any personal involvement in the preparation of that chart. Alternative exculpatory inferences abound, such as that Mr. Dunton, as CEO of a large company, relied in good faith on subordinates – both to accomplish ministerial details like routine use of a signature stamp, and to rightly reflect the Company's transactions in public disclosures. These innocent inferences are much stronger than Plaintiffs' strained series of inferences.

The suggestion that permitting the use of a signature stamp might have amounted to recklessness on Mr. Dunton's part lacks any merit. *See* Opp. Br. 3, 10; *see also*, *In re Doral Fin. Corp. Sec. Litig.*, 563 F. Supp. 2d 461, 466 (S.D.N.Y. 2008) (recklessness theory of scienter requires "conscious turning away from the true facts"). Plaintiffs do not challenge that the use of facsimile signature stamps is routine in the insurance industry. *See* Defs. Br. 10. Plaintiffs' "recklessness" argument ignores the real issue: not whether Mr. Dunton acted appropriately in allowing the use of a signature stamp, but whether the routine use of such stamps reasonably gives rise to a compelling inference about Mr. Dunton's (much less Mr. Chaplin's) state of mind with respect to the accuracy of corporate disclosures in the CDO Primer made months later, where Plaintiffs do not

2

even allege that either Individual Defendant played any specific role in the preparation or issuance of such disclosures.

Even if Mr. Dunton were assumed to have personally reviewed the two policies that bear his facsimile signature, there still would be no basis for a compelling inference of scienter. One policy, Logan III, listed its RMBS collateral in a small part of a 71-page exhibit. Hamilton Decl. Ex. H. But the CDO Primers' charts "did not disclose the names of [particular] transactions." Second Amended Complaint ¶ 134. Accordingly, there is no basis for a compelling inference that Mr. Dunton would have recognized that Logan III was missing from the charts even if he had personally reviewed that policy's collateral details months before. As for the second policy, Menton IV expressly *excluded* RMBS collateral. Hamilton Decl. Ex. I at 46-47 (Menton IV Confirmation). Plaintiffs' complicated explanation of how this *exclusion* of RMBS purportedly shows Mr. Dunton's awareness of the *inclusion* of RMBS (Opp. Br. 8 n.3) only makes clear how likely it is that Mr. Dunton could have missed the string of inferences on which Plaintiffs' explanation relies.[1]

II.  **Plaintiffs' Allegations Regarding Other Documents Are Also Inadequate**

   A.  **The Mere Availability Of Documents Does Not Establish Scienter**

Most of the documents mentioned in the Second Amended Complaint are alleged only to have been reviewed by unnamed "senior executives" (¶¶ 140, 155, 157, 158), or

---

[1]  Plaintiffs concede that the other four CDO-squared transactions absent from the CDO Primers' charts do not bear Mr. Dunton's signature, genuine or facsimile. Opp. Br. 2, 9 n.4.

3

to have been generally "available," but not "provided," to Mr. Dunton and Mr. Chaplin (¶¶ 140, 148, 155, 159). "[A]llegations that corporate officers [such as Mr. Dunton or Mr. Chaplin] 'could' have received reports are insufficient." *In re Société Générale Sec. Litig.*, No. 08 Civ. 2495(RMB), 2010 WL 3910286, at *7 (S.D.N.Y. Sept. 29, 2010) (citing *Campo v. Sears Holdings Corp.*, 371 F. App'x 212, 216-17 (2d Cir. 2010) (summary order)). As this Court has already held, one "may not infer scienter 'solely from the fact that, due to defendants' board membership or executive managerial position, they had access to the company's internal documentation as well as any adverse information.'" March 31 Opinion at 35 (citation omitted); *accord*, *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 649-54 (S.D.N.Y. 2007) (recklessness inadequately pled where based solely on certain defendants' positions as officers or audit committee members). Plaintiffs are not free to selectively read the prior Opinion or simply ignore legal defects the Court set forth.

In the cases cited by Plaintiffs to try to show that "access" can establish scienter, the complaints specifically alleged much more. In *In re Van Der Moolen Holding N.V. Sec. Litig.*, 405 F. Supp. 2d 388, 406-07 (S.D.N.Y. 2005), New York Stock Exchange officials allegedly discussed with members of the management committee on which the individual defendants served two specified reports showing illegal trading, which the court not surprisingly found "constituted red flags." Other cases cited by Plaintiffs, Opp. Br. 17, to suggest that mere "access" is sufficient concerned allegations of a massive restatement in connection with the company's "core operations," *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489-92 (S.D.N.Y. 2004), or of

4

officers' involvement with fraudulent transactions with an "obvious lack of business purpose." *In re Refco*, 503 F. Supp. 2d at 649-54. The Complaint here does not plead any such particularized circumstances comparable to what was alleged in those cases.

Plaintiffs do not succeed in pleading that Mr. Dunton or Mr. Chaplin recklessly failed to fulfill a duty to monitor. *See* Opp. Br. 13. "Even an egregious failure to gather information will not establish 10b-5 liability as long as the defendants did not deliberately shut their eyes to the facts." *S. Cherry St. LLC v. Hennessee Grp. LLC (In re Bayou Hedge Fund Litig.)*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007), *aff'd*, 573 F.3d 98 (2d Cir. 2009) (citation omitted). Nothing in the instant Complaint supports a compelling inference that Mr. Dunton or Mr. Chaplin deliberately shut their eyes to the facts. The far more compelling inference is that they properly relied on subordinates to review the specifics of deal collateral and to prepare disclosures.

Plaintiffs have virtually conceded Mr. Chaplin's lack of scienter. They make next to no new allegations against him. As with Mr. Dunton, they do not plead with particularity that Mr. Chaplin was involved in the preparation or issuance of the CDO Primers. Plaintiffs' disingenuous allegation that Mr. Chaplin personally conducted MBIA's surveillance process, Second Amended Complaint ¶ 162, takes his statements during earnings calls entirely out of context. *See* Defs. Br. at 22-23; *see also*, Hamilton Decl. Ex. F at 3, 17 (April 26, 2007 Tr.); Trakht Decl. Ex. 14 at 3 (Oct. 25, 2007 Tr.). Plaintiffs now seem to concede that Mr. Chaplin was merely generally "familiar" with MBIA's surveillance efforts, Opp. Br. 22, but this does not support a strong inference of scienter here. Plaintiffs cite *In re Ambac Fin. Grp. Sec. Litig.*, 693 F. Supp. 2d 241, 268-

5

69 (S.D.N.Y. 2010) to argue that a defendant's assertions about its surveillance process can support a claim of scienter, but in contrast to the *Ambac* case Plaintiffs do not allege any misstatements about either MBIA's surveillance function or the performance of its insured portfolio. Beyond the earnings calls, Plaintiffs make two nonsensical arguments: (1) that Mr. Chaplin, as CFO, must have had knowledge of a document purportedly "signed" *by Mr. Dunton*, Opp. Br. 13; and (2) that Mr. Chaplin must have received reports in connection with the meetings of a committee to which Plaintiffs admit he did not belong. Opp. Br. 15 n.6. Plaintiffs also misleadingly quote excerpts from the Court's Opinion discussing Mr. Dunton as applying to Mr. Chaplin as well. *Compare* Opp. Br. 1 & 6, *with* March 31 Opinion at 36.

### B. Plaintiffs' Inadequate Confidential Witness Allegations Cannot Rescue Their Arguments Based On Due Diligence Materials

Plaintiffs' expanded reliance on confidential witnesses underscores the deficiencies in their allegations, Second Amended Complaint ¶¶ 12, 151, that Mr. Dunton and Mr. Chaplin purportedly received some due diligence materials at the ECC. These materials are the only documents alleged to have been actually received by the Individual Defendants, other than the two insurance policies purportedly "signed" by Mr. Dunton.

The confidential witness allegations provide no basis for sustaining this Complaint. Fairness and precedent alike require that Plaintiffs "describe [the CWs] in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000). Plaintiffs have not done so. CW 2 allegedly

6

was involved with unidentified "CDO transactions" (of which MBIA insured hundreds, Trakht Decl. Ex. 7 at 3 (Aug. 2, 2007 Tr.)), but does not purport to have been involved with any of the six CDO-squared transactions at issue. Second Amended Complaint ¶ 151. CW 3 is only alleged to have worked in "Global Pricing" and "Public Finance Secondary Markets," *id.* ¶ 153, public finance being a line of business entirely distinct from the structured finance deals at issue here. *Id.* ¶ 34. Plaintiffs mischaracterize their own Complaint's allegations when they argue that CW 3 said anything about CDO-squared transactions. *Compare* Opp. Br. 15, *with* Second Amended Complaint ¶ 153. CW 3's allegations were limited to general statements about "each [unidentified] transaction that Defendants Dunton and Chaplin reviewed." Second Amended Complaint ¶ 153. Simply put, nothing in Plaintiffs' descriptions of CW 2 or CW 3 supports either witness's competence to establish scienter about the fraud alleged in this case.

The inadequacy of the CW allegations here is demonstrated by *Local No. 38 Int'l Bhd. of Elec. Workers Pension Fund v. Am. Express Co.*, No. 09 Civ. 3016(WHP), 2010 WL 2834226 (S.D.N.Y. July 19, 2010). In that case, involving alleged misstatements about the credit quality of American Express customers, the court found inadequate the allegations of a CW who "prepared reports for senior executives" and who alleged "that higher delinquency rates . . . 'would have been reported to the Company's CFO' in monthly meetings." *Id.* at *11. The instant Complaint's allegations about information that "would have been reported" to Mr. Dunton and Mr. Chaplin are similarly inadequate.

Unlike the cases cited by Plaintiffs, Opp. Br. 20-21 n.10, the CWs here are not alleged to have had any particular interactions with the Individual Defendants concerning

7

specific facts contradicting MBIA's disclosures.  *Cf. Freudenberg v. E*TRADE Fin. Corp.*, 712 F. Supp. 2d 171, 183 (S.D.N.Y. 2010) (defendant attended meetings at which CW said that mortgage loans disclosed as "superprime" were actually highly risky); *Cornwell v. Credit Suisse Grp.*, 689 F. Supp. 2d 629, 637 (S.D.N.Y. 2010) (CWs circulated to defendants specific risk and profit/loss reports indicating "significant losses"); *In re Dynex Capital, Inc. Sec. Litig.*, No. 05 Civ. 1897(HB), 2009 WL 3380621, at *13 (S.D.N.Y. Oct. 19, 2009) (CWs prepared audit reports that were "necessarily reviewed" by the individual defendants in their creation of offering documents). Plaintiffs cannot support their claims against Mr. Dunton or Mr. Chaplin by citing a case where a CW's allegations might help establish *corporate* scienter but did not support *individual* scienter (*In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 303 (S.D.N.Y. 2009)), nor by citing a case where the CW was an executive in the division in which the defendant company took massive write-downs (*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 358, 362 (S.D.N.Y. 2006)).

Plaintiffs cannot explain away their failure "to specify the internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them," *Hollin v. Scholastic Corp. (In re Scholastic Corp. Sec. Litig.)*, 252 F.3d 63, 72 (2d Cir. 2001), by asserting that "[a] plaintiff need not plead dates, times and places with absolute precision."  Opp. Br. 18 (quoting *In re Atlas*, 324 F. Supp. 2d at 488).  The quoted language from *Atlas* does not dispute the heightened standard imposed by the Second Circuit for pleading scienter based on "internal reports."  *See In re Atlas*, 324 F. Supp. 2d at 488.  The *Atlas* court itself makes this distinction: "[When] a plaintiff

8

alleges that the defendant made overly optimistic statements and that internal company reports should have alerted the defendant to the falsity of his statements[,] . . . it is incumbent upon him to identify sufficiently the internal reports that would have alerted the defendant to the falsity of the statements at issue." *Id.* at 495.  Plaintiffs fail to do in the instant Complaint what *Hollin* and *Atlas* require.

Plaintiffs' assertion that they met the requirement that they plead "how firm the numbers are," *Hollin*, 252 F.3d at 72, in the alleged due diligence memos is based on speculation.  Plaintiffs now concede that due diligence materials indicated the amount of RMBS in a transaction only "when that information was available."  Opp. Br. 19. Plaintiffs recognize that internal reports sometimes only disclosed "the maximum allowable percentage of RMBS," *id.*, but a "maximum allowable" level would not establish that the transactions actually contained any RMBS.

In sum, these CW allegations do nothing to overcome the flaws in the original complaint.  They fully deserve the greater scrutiny that is due them after *Tellabs*.  *See Campo*, 371 F. App'x at 216 n.4 (summary order) ("The anonymity of the sources of plaintiffs' factual allegations concerning scienter frustrates the requirement announced in *Tellabs*, that a court weigh competing inferences . . . ."); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 535 (5th Cir. 2008) ("courts must discount allegations from confidential sources" after *Tellabs*); *Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) ("It is hard to see how information from anonymous sources could be deemed 'compelling' . . . .").  Plaintiffs' citation to *Ambac*, 693 F. Supp. 2d at 283 & n.2 (cited at Opp. Br. 20 to criticize the above cases), is

9

beside the point, since the Complaint here has not met its burden under either *Novak* or *Tellabs*.[2]

### Conclusion

Plaintiffs concede that both their section 10(b) and their section 20(a) claims require them to plead scienter, Opp. Br. 22, but they have failed again to plead scienter against either Mr. Dunton or Mr. Chaplin. All claims against Mr. Dunton and Mr. Chaplin therefore should be dismissed, with prejudice and without leave to replead.

Dated: New York, New York
October 29, 2010

                                    Respectfully submitted,

                                    DEBEVOISE & PLIMPTON LLP

                                    By: /s/ Robert N. Shwartz
                                         Robert N. Shwartz
                                         (rnshwartz@debevoise.com)
                                         Jeremy Feigelson
                                         (jfeigels@debevoise.com)
                                         Christopher J. Hamilton
                                         (cjhamilt@debevoise.com)

                                  919 Third Avenue
                                  New York, New York 10022
                                  (212) 909-6000

                                  Attorneys for Defendants

---

[2] Plaintiffs also attempt in vain to tie the allegations made by MBIA (not by Mr. Dunton or Mr. Chaplin) about its due diligence in its complaint against RBC (Hamilton Decl. Ex. J) to the materials allegedly received by the ECC. The memoranda and presentations alleged by Plaintiffs here are not even mentioned in the RBC complaint. *Compare* Opp. Br. at 4-5, 14-15, *with* Hamilton Decl. Ex. J at ¶¶ 67, 73.